IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

K.H., an Infant, By and Through
Her Parents and Next Friends,
Michelle Holweger and Scott Holweger;
Michelle Holweger, Individually; and Scott Holweger,
Individually

      Plaintiffs.

v.

      2:10cv55

UNITED STATES OF AMERICA,

      Defendant.

SERVE:    The Honorable Eric Holder
             United States Attorney General
             U.S. Department of Justice
             950 Pennsylvania Avenue, N.W.
             Washington, DC 20530-0001

             Neil H. MacBride
             Office of the United States Attorney
             for the Eastern District of Virginia
             World Trade Center, Suite 8000
             101 West Main Street
             Norfolk, VA 23510

## COMPLAINT

The Plaintiffs, K.H., an Infant, By and Through Her Parents and Next Friends, Michelle Holweger and Scott Holweger; Michelle Holweger, Individually; and Scott Holweger, Individually, by counsel, state as their Complaint against the Defendant, the United States of America, as follows:

1.    This is a medical malpractice case.

2.    Plaintiffs K.H., and her parents Michelle Holweger and Scott Holweger reside in Virginia Beach, VA, which is within the jurisdiction of this Court.

3. The Defendant is the United States of America.

4. This Federal District Court has jurisdiction of this cause, because this action is brought pursuant to and in compliance with 28 U.S.C §§1346(b), 2671-2680 et seq., commonly known as the "Federal Tort Claims Act", which vests exclusive subject matter jurisdiction of Federal Tort Claims litigation in the Federal District Court.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e), as the United States is a Defendant and a substantial part of the events or omissions giving rise to the claim that occurred in this district.

6. This case is commenced and prosecuted against the United States of America pursuant to and in compliance with Title 28 U.S.C. §§2671-2680, commonly referred to as the "Federal Tort Claims Act". Liability of the United States is predicated specifically on Title 28 U.S.C. §§ 1346(b)(1) and 2674 because the personal injuries and resulting damages of which complaint is made, were proximately caused by the negligence, wrongful acts and/or omissions of employees of the United States of America at the Naval Medical Center Portsmouth (NMCP) in Portsmouth, Virginia, while acting within the scope of their office or employment, under circumstances where the United States of America, if a private person, would be liable to the Plaintiffs in the same manner and to the same extent as a private individual under the laws of the State of Virginia.

7. Plaintiffs plead pursuant to Title 28 U.S.C. §§ 2672 and 2675(a), that the claims set forth herein were filed with and presented administratively to the Defendant's agency, the United States Navy, on June 30, 2008. Greater than six months has passed since the filing of these claims, and the United States Navy has failed to resolve the claims. Accordingly, the claims are deemed denied. Plaintiffs have complied with all jurisdictional prerequisites and conditions precedent to commencement and prosecution of this litigation.

8. The United States Navy is an agency of the United States of America. The United States of America, Defendant herein, through its agency, the United States Navy, at all times material hereto, owned, operated and controlled the health care facilities known as the Naval Medical Center Portsmouth (NMCP) in Portsmouth, Virginia, and through its agency, the United States Navy, staffed said health care facilities with its agents, servants, and/or employees.

9. At all times material hereto, all persons involved in the medical and health care services provided to Plaintiffs at the Naval Medical Center Portsmouth (NMCP) in Portsmouth, Virginia, were agents, servants, and/or employees of the Department of the Navy, the United States of America, or some other agency thereof, and were at all times material hereto, acting within the course and scope of such employment.

10. This is a Federal Tort Claims Action for monetary damages sustained by the Plaintiffs resulting from personal injuries to Michelle Holweger and a minor child, K.H., as a result of negligent medical care.

11. On or about 14:08, (REDACTED) 2006, Plaintiff, Michelle Holweger, then 35 weeks and 2 days pregnant, was admitted to the Labor and Delivery Emergency Room at the Naval Medical Center in Portsmouth, Virginia. Mrs. Holweger presented to NMCP because she was experiencing severe lower abdominal cramping, which started at approximately 10:30 that morning and became progressively worse.

12. At admission, Mrs. Holweger reported that she was feeling fetal movement.

13. Almost one hour after being admitted, Mrs. Holweger was moved to a triage room by T. Johnson, LT. She was connected to a fetal heart monitor at 15:02. At that time, the fetal heart rate (FHR) was noted to be 120 beats per minute, in the normal range for a baby.

14. In addition to measuring the fetal heart rate in beats per minute, the variability of the fetal heart rate was also assessed on a fetal heart monitor. The fetal heart rate monitor indicated minimal to no variability in the fetal heart rate, which is nonreassuring, a cause for concern and intervention, and indicative of ongoing fetal stress. Without intervention, fetal stress puts the baby at risk of fetal decompensation, which leads to fetal injury and ultimately, death.

15. It took over an hour for T. Johnson, LT to notify a physician about the nonreassuring fetal monitor strip. For more than an hour, no standard nursing interventions were made to increase the flow of oxygen to the baby (called intrauterine resuscitation). The standard nursing interventions for intrauterine resuscitation would have included giving Mrs. Holweger oxygen, turning her on her left side, and/or providing IV fluids to Mrs. Holweger.

16. After one hour and 40 minutes of monitoring, at approximately 16:42, the fetal monitor was disconnected. No investigation was made by the defendant health care providers to determine the cause of the cramping and nonreassuring fetal monitor strip.

17. A biophysical profile (a test of fetal well being) was performed. During the biophysical profile, decompensation occurred and the test was halted. K.H.'s heart rate worsened, became agonal, dropped (into the 60's), and became what is called "severe terminal bradycardia."

18. At 16:46, Mrs. Holweger was taken to the Operating Room, and an emergency cesarean section (C-section) was performed due to "nonreassuring fetal monitoring" and "severe fetal bradycardia, possible placental abruption."

19. A placental abruption occurs when the placenta detaches from the uterine wall, partially or completely. A placental abruption is an obstetrical emergency. The placenta is the organ of respiration for the baby. Prior to birth, the placenta provides oxygen to the baby, but

when it detaches from the uterine wall, the oxygen flow to the baby is either partially or completely interrupted.

20. The findings at the time of the C-section were that Mrs. Holweger had a "complete placental abruption," which means the placenta had, by that time, completely separated from the uterine wall, thus completely interrupting the oxygen flow to the baby.

21. K.H. was born at 16:50, pale, apneic, bradycardic, depressed, flaccid, and in respiratory failure. Her APGAR scores (indicative of neonatal well being or lack thereof) were very low, 1 at one minute after birth, 2 at five minutes after birth, and 4 at 10 minutes after birth.

22. Chest compressions and bag and mask ventilation were started. K.H. was then intubated and transported to the Neonatal Intensive Care Unit. She was diagnosed with metabolic acidosis and severe neurologic depression. That same day, K.H. was transferred to Children's Hospital of the King's Daughters for further care.

23. On the date of her birth, at Children's Hospital of the King's Daughters, K.H. was diagnosed with "severe hypoxic-ischemic encephalopathy due to placental abruption."

24. K.H.'s neurological injuries are extensive, severe, and permanent. She is severely delayed in all areas of development.

25. Had Mrs. Holweger and K.H. been timely and properly evaluated, treated, and delivered in a timely manner by C-section, Michelle Holweger would not have suffered a complete placental abruption, K.H. would not have suffered complete oxygen deprivation during the complete placental abruption, and K.H. would not have sustained permanent neurological damage, cerebral palsy, and its numerous and lifelong sequealae.

26. Defendant, the United States of America, was negligent in one or more of the following respects:

(a) Defendant failed to properly and timely care for Michelle Holweger and K.H.;

(b) Defendant failed to properly and timely treat Michelle Holweger and K.H.;

(c) Defendant failed to properly and timely monitor Michelle Holweger and K.H.;

(d) Defendant failed to timely and properly recognize nonreassuring findings on the fetal monitor strip of Michelle Holweger and K.H.;

(e) Defendant failed to timely and properly act upon nonreassuring findings on the fetal monitor strip of Michelle Holweger and K.H.;

(f) Defendant failed to timely and properly perform intrauterine resuscitation;

(g) Defendant failed to properly and timely alert and warn physicians of the nonreassuring findings on the fetal monitor strip of Michelle Holweger and K.H.;

(h) Defendant failed to timely and properly suspect that Michelle Holweger was experiencing a placental abruption;

(i) Defendant failed to timely and properly recognize and respond when Michelle Holweger presented with severe cramping and a fetal monitor strip with minimal to no variability;

(j) Defendant failed to timely and properly perform a biophysical profile when the fetal monitor strip indicated nonreassuring findings; and

(k) Defendant failed to properly and timely deliver K.H. by Cesarean Section.

27. At all times mentioned herein, the employees, agents, and/or representatives of the United States Government were negligent and such negligence directly caused the injuries and damages sustained by Plaintiffs.

28. As a result of Defendant's negligence, the minor Plaintiff K.H. suffered, and continues to suffer, severe personal injuries, including but not limited to, past and future physical

and mental pain and suffering; past and future medical, health care, and attendant care expenses; permanent disfigurement; past and future permanent physical impairment; past and future mental impairment and anguish; loss of enjoyment of life; loss of years of life expectancy; and complete loss of earning capacity. Such injuries are, in reasonable probability, permanent in nature. The minor Plaintiff, K.H., brings this suit to recover all damages cognizable under the law resulting from the injuries to her as a result of the Defendant's negligence.

29. As a direct and proximate result of the Defendant's negligence, Plaintiff Michelle Holweger suffered a complete placental abruption, an injury to her baby in utero, which caused injury to her personally, personal anguish, emotional distress and pain and suffering.

30. As a direct and proximate result of the Defendant's negligence, Plaintiff Michelle Holweger suffered and continues to suffer mental anguish and damages as a result of K.H.'s injuries.

31. As a direct and proximate result of Defendant's negligence, Plaintiffs, Michelle Holweger and Scott Holweger, as the natural parents of K.H., are entitled to and claim as damages the reasonable cost and value of all necessary and extraordinary attendant care they have provided and w ill likely be providing to their child by reason of her disabling injuries and resulting medical conditions. Michelle Holweger and Scott Holweger, as the natural parents of K.H., claim as damages the past and future medical, health care, and attendant care expenses attributable to K.H. for the duration of her life. Michelle Holweger and Scott Holweger, individually, and as parents and next friends of K.H. bring this suit to recover all damages cognizable under the law resulting from the injuries to K.H. and to themselves as a result of the occurrence in question.

32. In this Complaint, whenever the term "Defendant" is used, it means Defendant, Defendant's officers, agents, servants, employees, and/or representatives. Whenever in this

Complaint it is alleged that Defendant did any act or thing, it is meant that Defendant, Defendant's officers, agents, servants, employees, and/or representatives did such act or thing, and that at the time such act or thing was done, it was done with the full authorization and ratification of Defendant and was done in the normal and routine course and scope of employment of Defendant's officers, agents, servants, employees, and/or representatives. Whenever in this Complaint it is alleged that Defendant omitted any act or thing, it is meant that Defendant, Defendant's officers, agents, servants, employees, and/or representatives omitted such act or thing.

## AD DAMNUM

For the foregoing reasons, Plaintiffs respectfully pray for judgment against the defendant, the United States of America, and an award of execution in the amount of FIFTEEN MILLION DOLLARS ($15,000,000.00) for their injuries and losses, as well as post-judgment interest as allowed by law, and for their costs expended herein.

Respectfully submitted,

*[signature]*

**Amberley Gibbs Hammer Esq.** (Local Counsel)
Bertini O'Donnell & Hammer, PC
Dominion Tower, Suite 1010
999 Waterside Drive
Norfolk, VA 23510
(757) 670-3868
(757) 670-3865 (fax)

**LAURIE HIGGINBOTHAM** *(Pro Hac Vice Pending)*
Texas State Bar Number: 50511759
**JAMAL ALSAFFAR** *(Pro Hac Vice Pending)*
Texas State Bar Number: 24027193
**ARCHULETA, ALSAFFAR & HIGGINBOTHAM**
P.O. Box 340639
Austin, Texas 78734
Telephone: (512) 266-7676
Telefax: (512) 266-4646

**ATTORNEYS FOR PLAINTIFFS**